UNITED STATES of America, Plaintiff–Appellee,

v.

Luis Oscar SARMIENTO–PEREZ, Defendant–Appellant.

No. 79–5391.

United States Court of Appeals, Fifth Circuit. Unit A

Jan. 9, 1981.

charged, be admitted into evidence against the accused as a statement against the confessor's penal interest under Fed.R.Ev. 804(b)(3)? We hold that it may not, and we reverse this conviction wherein the coconspirator's confession, introduced because the coconspirator refused to testify on fifth amendment grounds and was therefore unavailable as a witness, Fed.R.Ev. 804(a)(1), was key evidence that the accused knowingly and willfully participated in the conspiracy charged. Without reaching the issue of whether the admission of such evidence offends the confrontation rights of the accused under *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), we hold that the custodial confession of the coconspirator, insofar as it directly charges that the defendant participated in the criminal conduct charged, is inadmissible because it is not reliable or trustworthy evidence against the accused, *Douglas v. Alabama, supra*, for the purposes of the against–penal–interest exception to the hearsay rule, Fed.R.Ev. 804(b)(3).

I

Before reaching the facts of the present case, we deem it advisable to set forth the constitutional and legislative context of the problem before us.

In *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Supreme Court reversed a conviction in circumstances similar to the present ones, because the substance of a custodial confession of a separately tried codefendant, which directly implicated the accused in the crime, was admitted into evidence in the guise of cross–examination of a hostile witness. (The codefendant had asserted his constitutional privilege to not answer any questions concerning the crime.) In doing so, the Court held that the confrontation clause of the sixth amendment prevented the admission of such evidence—the reliability of its incriminating substance could only be insured by a cross–examination of the declarant designed to illuminate the accuracy of the statements insofar as they concerned the accused then on trial.

Arthur Addess, Miami, Fla., Michael P. Striar, North Miami Beach, Fla., for defendant–appellant.

John M. Potter, Asst. U.S. Atty., Houston Tex., for plaintiff–appellee.

Before THORNBERRY, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The issue before us is one of first impression: May the custodial confession of a non–testifying, separately tried coconspirator/codefendant, insofar as the confessor directly implicates an accused in the crime

For similar reasons, in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held that the accused's constitutional right to cross—examination was violated by the admission into evidence of the custodial confession of a codefendant, even though the trial court had instructed the jury that the confession had to be disregarded in the jury's determination of the accused's guilt or innocence. The issue before us concerns the reliability as evidence against an accused of a codefendant's custodial confession implicating the accused in the crime. With regard thereto, the dissent of Mr. Justice White for the two dissenters is illuminating. The dissenters felt that the instruction to the jury—to disregard the codefendant's confession in determining the defendant's guilt or innocence—was sufficient to prevent prejudice because the jury could easily understand the obvious inherent unreliability of a custodial confession of an accomplice insofar as it implicates an accused in the commission of a crime:

As to the defendant, the confession of the codefendant is wholly inadmissible. It is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. . . . More than this, however, the statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence. Whereas the defendant's own confession possesses greater reliability and evidentiary value than ordinary hearsay, the codefendant's confession implicating the defendant is intrinsically much less reliable.

391 U.S. 138 at 141–42, 88 S.Ct. 1629 at 1630–31 (citations omitted).

As will be elaborated later, the core holdings of these decisions were not disturbed by the plurality opinion in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). (This decision did hold, however, that uncrossexamined hearsay admitted into evidence by virtue of an exception to the hearsay rule did not necessarily violate an accused's confrontation rights where certain indicia of reliability were met.)

The present defendant contends that an accused's constitutional confrontation rights, as explicated by *Douglas* and *Bruton*, were not affected by the promulgation of the Federal Rules of Evidence in 1975. The Rules included a new hearsay exception, which expanded the exception permitting introduction of statements against the declarant's interest; by the expansion, the exception permitted admissibility of statements against a declarant's penal interest, not only those (as before) affecting his pecuniary and proprietary interests. The new exception is provided in Rule 804(b)(3):

*Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, *or so far tended to subject him to civil or criminal liability,* or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to *exculpate* the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. (Italics supplied.)

With regard to the issue before us, the legislative history of the adoption of this rule is of interest. See: Rule 801, Notes of Advisory Committee, Notes of House Committee on the Judiciary, Notes of Senate Committee on the Judiciary, Notes of House Conference Committee, *West's Federal Rules, Civil Procedure–Evidence–Appellate Procedure* 218–22 (1980 ed.); 4 Weinstein's Evidence ¶ 804(b)(3)[03] at pp. 804–109 through –112 (1979); Comment, *Federal Rule of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest,* 66 Cal.L.Rev. 1189 (1978).

By a proposed final sentence to the Rule, the original 1969 and 1971 Advisory Committee drafts explicitly barred the admission under the new hearsay exception of

evidence such as that before us: "This exception does not include a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused." This sentence was omitted, however, in the final unpublished committee draft forwarded to the Court in late 1971 and as promulgated by the Court in late 1972. In the process of legislative oversight over promulgation of the Rule, the sentence was first reinstated by the House, but then deleted by the Senate, an action in which the conference committee concurred. The stated reason for the deletion was in accordance with a basic rule–drafting approach to avoid codifying constitutional evidentiary principles because "[c]odification of constitutional principles is unnecessary and where the principle is under development often unwise." *West's Federal Rules, supra*, at 221.

However, the Advisory Committee Notes on the proposed rules, in all drafts, discussed the relationship of *Douglas* and *Bruton* to the penal–interest hearsay exception. In the final version of the Advisory Committee notes, it states that *Douglas* and *Bruton*

> by no means require that all statements implicating another person be excluded from the category of declarations against interest. Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. See the dissenting opinion of Mr. Justice White in *Bruton*. On the other hand, the same words spoken under different circumstances, e. g., to an acquaintance, would have no difficulty in qualifying.

The rule does not purport to deal with questions of the right of confrontation. *West's, Federal Rules, supra*, at 219–20

Summarizing the legislative history, Judge Weinstein concludes that "[i]n context, this means that the Rule should be interpreted to include this language [that the against–penal–interest 'exception does not include a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused.']" Weinstein's Evidence, *supra*, at 804–110. On the other hand, a perceptive study concludes that the legislative history is at least ambiguous as to this issue. Comment, 66 Cal.L.Rev., *supra*, at 1198.

No decision cited to or discovered by us concerns the attempted introduction of an accomplice's custodial confession under Rule 804(b)(3) (or any other principle) as evidence of the accused's guilt. The issue would not of course arise for appellate purposes unless a district court *admitted* an accomplice's custodial confession into evidence, and possibly, until now, if presented with the issue a trial court has excluded it, either on principles of a denial of confrontation rights as expressly held by *Douglas v. Alabama*, or as insufficiently trustworthy as evidence against the accused for purposes of admission under Rule 804(b)(3).

Of the cases cited to us, the closest involving the admission in a criminal trial of uncrossexamined statements of an accomplice are *United States v. West*, 574 F.2d 1131 (4th Cir. 1978) and *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976). In these instances, where a grand jury witness was either murdered (*West*) or intimidated (*Carlson*) before trial so as to be unable to testify, his uncrossexamined grand jury testimony was admitted under the residual exception provided by Rule 804(b)(5),[1] and

---

1. Rule 804(b)(5):

 (b) *Hearsay exceptions* : The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

 (3) *Statement against interest.* [quoted in text.]

 . . . . .

 (5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for

confrontation rights were either held waived (by the accused's intimidation of the witness, see *Carlson*) or else not offended because of the particular substantial guarantees of trustworthiness offered by the testimony in question (see *West*). In this circuit, a conviction was reversed because of a similar attempt in the trial of an accused to use the grand jury testimony of a coconspirator, unavailable since he refused to testify. *United States v. Gonzalez*, 559 F.2d 1271 (5th Cir. 1977). We there noted that the giving of the testimony, insofar as against the accused, was in the coconspirator's best interest; it therefore did not meet the against–penal–interest requirement of Rule 804(b)(3) that it "so far tended to subject him to ... criminal liability, ... that a reasonable man in his position would not have made the statement unless he believed it to be true."

Whatever the merits of the judicial rationales permitting admissibility under the exceptional factual situations there presented to the courts, we do not find them particularly apposite to the determination of the precise issue before us. This, as in *Douglas v. Alabama*, concerns a custodial confession, traditionally viewed as of suspect reliability insofar as the declarant attempts to shift or share the blame, for whatever reason.

Ultimately, we determine that we need not reach the issue of whether the admission of the accomplice's custodial confession as evidence directly implicating the accused in the crime charged offended the latter's constitutional confrontation rights. We have concluded that, at the least, the custodial confession is (when offered against the accused) of insufficient reliability to permit its introduction under Rule 804(b)(3) under the test enunciated by this circuit in *United*

*States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978).[2] Before we articulate our reasons, we set forth the factual context of the present litigation in which this issue arises.

## II

The defendant Sarmiento–Perez was convicted on one count of conspiring to possess with intent to distribute, and two counts of distributing, cocaine, in violation of 21 U.S.C. §§ 846 & 841(a)(1). Although the indictment charged three other codefendants with the crimes, Sarmiento–Perez was tried separately.

The evidence shows the following facts:

In 1977, Agent Ismael Fuentes of the Justice Department's Drug Enforcement Agency (DEA) was known to Jose Cantu, Jr. (a codefendant) as "Gilbert Garza." In October of 1978, Cantu telephoned Fuentes/"Garza" to inform him that large quantities of high quality cocaine were available, and to inquire whether Fuentes/"Garza" might be interested in making a purchase. Fuentes/"Garza" expressed his interest and a meeting was arranged. Fuentes/"Garza" met with Cantu and one Roberto Aguilar (another codefendant), whose confession is the focus of this appeal.

The testimony at trial revealed that Jose Cantu had never at any time met or conversed with *Luis Oscar* Sarmiento—Perez, the defendant—his names "Luis" and "Oscar" are, however, relevant to the identification of the present defendant as a coconspirator, for Cantu knew only that the cocaine was to come from Florida. During the course of the negotiations between Fuentes/"Garza" and Aguilar, Aguilar identified his source as one Lauro Ybanez (the brother–in–law of Sarmiento–Perez,

---

which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse

party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the defendant.

2. There, the admission of an oral inculpatory statement made by a dead declarant to the accused's alleged accomplice, who had pleaded guilty, was held to be reversible error.

and the third codefendant). Eventually, Fuentes/"Garza" met Ybanez and concluded the negotiations in the presence of Aguilar and Ybanez. Fuentes/"Garza" never dealt directly with Sarmiento–Perez, but both Aguilar and Ybanez made references to Ybanez's brother–in–law *"Oscar,"* or *"Luis,"* as the source of the South American drugs. In addition, Fuentes/"Garza" answered a telephone call from a person who identified himself as *"Oscar"* and asked to speak to Ybanez. Another DEA agent, Nick S. Zapata, spoke to a person on the telephone who identified himself as *"Luis."*

DEA surveillance agents observed the defendant Sarmiento–Perez pick up Aguilar and Ybanez at Miami International Airport and drive to Sarmiento–Perez's residence, where Aguilar and Ybanez picked up a white Buick, and departed. The following evening, agents observed Sarmiento–Perez arrive at the Sheraton Motel, stay a few minutes, then drive to the Ramada Inn parking lot. Shortly thereafter, Aguilar and Ybanez were seen arriving at the Ramada Inn parking lot. Aguilar was observed retrieving a box from the trunk of

Sarmiento–Perez's Cadillac. (No evidence—other than the confession referred to below—shows that Sarmiento–Perez had placed this box in the trunk of his car or had reason to know of its contents.) Thereafter, Aguilar and Ybanez drove from the Ramada Inn parking lot to the Sheraton Motel, where the sale was completed, and Aguilar and Ybanez were arrested. The box was later found to contain cocaine (pretermitting chain–of–custody and inadmissible–hearsay contentions).

While in custody at the DEA offices in Miami, Aguilar tendered the handwritten confession that is in dispute on this appeal. In the confession, Aguilar identified "Oscar" (the defendant Sarmiento–Perez) as the source of the cocaine and as an active participant in the sale of the cocaine to Agent Fuentes.[3]

Sarmiento–Perez vigorously challenges the admission into evidence against him of Roberto Aguilar's confession under both the Federal Rules of Evidence and the confrontation clause of the sixth amendment.

---

**3.** The confession was introduced at a non–jury *James* hearing, R.II, 147–49, in order to establish a prima facie case for admission of the alleged coconspirators' out- of–court declarations, and it was also introduced at the trial before the jury as Government Exhibit 4, R.III, 271. Aguilar's confession was, of course, not admissible as a non–hearsay coconspirator statement because made after the conspiracy was terminated by the arrests and was therefore not made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(E).

Aguilar's confession stated as follows:

I, Roberto Aguilar arrived in Miami with Lauro Ybanez to do a coke deal with Agent Fuentes. Upon arriving, waited about 30 min. Picked up by Oscar (Lauro Ybanez brother–in–law) In red Cadillac. In route to unknown motel Lauro ask Oscar if everything was here (cocaine was here). Oscar said ("yes"). Arrived at motel. Receive a call—unknown caller telling me that we were being followed. About 1 hr. later spoke to Agent Fuentes on telephone. I told him that people were following me. We (Lauro & Oscar & me) decide to do deal the following day—11-2-78 in evening. We Lauro & I slept at Oscar's house. During day we drove looking to see if we were being follow. During time we were driving Oscar said that he thought that 17 more kilo's of cocaine were

coming in soon. Also that someone had run away with one that he gave him to turn over to someone else. He (Oscar) said that cocaine was of good quality, that he was to sell to Agent Fuentes. We then went to bar to hear from Agent Fuentes—about 4:50 p. m. About 5:20 Agent Fuentes call us at Oscar's Bar to meet him at the Sheraton Inn lounge. About 7:00 p. m. arrived met Agent Fuentes and Agent Zapata. Lauro & I told the agents that Oscar was expecting 17 kilos of cocaine today or tomorrow morning. Then Lauro went Agent Fuentes & Zapata to their room. I waited in bar. Later Agent Fuentes return & I saw both agent & Lauro in room 511. Lauro called Oscar. Made arrangement to get cocaine. Lauro & I then drove our car (Buick) to Ramada Inn across from Sheraton where we met with Oscar, waiting in Walk to red Cadillac. He got in. Trunk was open. I pick up my coat and started walking to the Buick. Lauro pick up the box of cocaine from trunk of Oscar's car. Lauro & Oscar talk for a couple of minutes & I waited outside the Buick. Then Lauro & I drove to Sheraton Inn & Lauro & I went to room 511—Lauro carrying box of cocaine, and gave it to Agent Zapata. On this same date I saw a gun in Oscar's red Cadillac in a glove compartment.

In response, the government argues that Aguilar's confession is clearly admissible under the Federal Rules as a declaration against Aguilar's penal interest under Rule 804(b)(3); that the same circumstances and conditions which would render the confession admissible under the Federal Rules would also prevent it from offending the sixth amendment's confrontation clause; and that, in any event, if the admission of the confession was error, the error was clearly harmless.[4]

### III

Federal Rule of Evidence 804(b)(3), quoted above in Part I, provides an express exception from the operation of the hearsay rule for an extrajudicial against–interest statement by an unavailable declarant, if the statement "so far tended to subject [the declarant] to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."

The rule further provides that such a statement is not admissible, if "offered to *exculpate* the accused . . . unless corroborating circumstances clearly indicate the trustworthiness of the statement." However, the rule does not in express terms, as finally promulgated, regulate the admission of such a statement when offered to *inculpate* the accused. Nevertheless, the rule clearly contemplates the admission, under appropriate circumstances, of such inculpatory (to a criminally accused) statements against the declarant's penal interest. See Part I, *supra*. The draftsman of the rule "left to the courts the task of delineating prerequisites to the admissibility of inculpatory against–penal–interest hearsay," with "the central underpinning of such a safeguard . . . the confrontation clause of the United States Constitution." *United States v. Alvarez*, 584 F.2d 694, 700 (5th Cir. 1978).

In *Alvarez*, taking into consideration confrontation requirements, this court established the general criteria for admissibility of such statements under Rule 804(b)(3) and concluded that the corroboration requirement expressly imposed upon exculpatory statements must also be met by inculpatory statements, 584 F.2d at 701. Thus, under *Alvarez*, the general test for the admissibility of statements against penal interest is the same, whether those statements are offered to exculpate or to inculpate the accused: (1) The declarant must be unavailable; (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement must be corroborated by circumstances clearly indicating its trustworthiness.

It does not follow, however, that the test is to be applied identically in all respects to inculpatory as to exculpatory statements against penal interest. To be sure, *Alvarez* could be read to that effect: The panel emphasized the value of establishing a unitary standard of admissibility under Rule 804(b)(3), *United States v. Alvarez*, 584 F.2d at 701, and indeed relied on prior decisions of this circuit dealing with exculpatory statements against penal interest in applying the test to the inculpatory statement then before it, *id.* at 699–702 & n.9.

Nevertheless, the *Alvarez* panel did not, in terms, purport to establish the maximum limits the confrontation clause might place upon the admissibility of inculpatory statements under Rule 804(b)(3). Fairly read, *Alvarez* simply holds that the sixth amendment requires inculpatory statements against penal interest to be corroborated by circumstances clearly indicating their trustworthiness, not that sixth amendment confrontation values may not require more. Nor does *Alvarez* imply that such hearsay is necessarily tested for its reliability (i. e., as truly against the declarant's penal interest)

---

**4.** Sarmiento–Perez argues in his brief and in his reply to the government's brief that the confession is inadmissible as a statement by a coconspirator under Fed.R.Ev. 801(d)(2)(E). The confession's failure to qualify as the out–of–court declaration of a coconspirator, see note 3 *supra*, does not directly preclude it from qualifying as a statement against interest within the intendment of Rule 804(b)(3).

or its trustworthiness (i. e., as clearly corroborated) when offered to *inculpate* an accused (which squarely implicates confrontation values), identically as when offered to *exculpate* an accused (where confrontation values at issue are minimal). *See, e. g.,* 4 Weinstein's Evidence ¶¶ 800[03], 800[04].

We therefore turn to the application of the *Alvarez* test to inculpatory against–penal–interest declarations in light of the special problems presented when, at the trial of innocence or guilt, the custodial confession of a declarant is offered as hearsay evidence that directly implicates the criminal defendant in the commission of the offense charged.

### IV

At the outset, we must take into consideration the interaction between constitutional confrontation values and a hearsay exception that permits into evidence against an accused a declarant's unsworn and uncrossexamined statements that directly and clearly implicate the accused in the commission of the crime for which he is on trial.

As *Alvarez* expressly recognized, it is the confrontation clause of the sixth amendment that forms the criminal defendant's principal protection against the use, or misuse, of incriminating extrajudicial statements. *United States v. Alvarez,* 584 F.2d at 700. The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The right of confrontation is, of course, not absolute. In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court of the United States illuminated what this and other circuits have come to see as the central feature of the confrontation guarantee, *see United States v. Alvarez,* 584 F.2d at 700–01; Comment, 66 Cal.L.Rev., *supra,* at 1197 & n.48:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determin-

ing process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."

*Dutton v. Evans,* 400 U.S. at 89, 91 S.Ct. at 220, *quoting California v. Green,* 399 U.S. 149, 169, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970). Thus, in *Dutton,* the Supreme Court recognized the existence of certain "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton v. Evans,* 400 U.S. at 89, 91 S.Ct. at 220. Such indicia of reliability include adequate prior opportunity for cross–examination, *see, e. g., California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and the circumstantial guarantees of reliability that traditionally have been associated with the recognized exceptions to the hearsay rule, *Ohio v. Roberts,* —— U.S. ——, ——, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *see, e. g., Mattox v. United States* 146 U.S. 140, 151–52, 13 S.Ct. 50, 53–54, 36 L.Ed. 917 (1892); McCormick on Evidence § 252, at 606–07 & n.10 (1972).

The Supreme Court has been at pains to point out that the contours of the hearsay rule and the confrontation clause are not wholly congruent. Conceptually, at least, evidence sufficiently reliable to qualify for admission under a recognized exception to the hearsay rule might yet offend confrontation values; and, conversely, the admission of incriminating hearsay evidence might well avoid impinging confrontation rights. *Dutton v. Evans,* 400 U.S. at 81–82, 86, 91 S.Ct. at 216, 218; *California v. Green,* 399 U.S. at 155–56, 90 S.Ct. at 1933–34. *See* 4 Weinstein's Evidence ¶ 800[04]; McCormick on Evidence, § 252.

Nevertheless, it is in practice difficult to discern the precise line of demarcation between the indicia of reliability that are sufficient to overcome confrontation problems and those that are sufficient to place an extrajudicial statement within the scope of a recognized exception to the hearsay rule. *See Ohio v. Roberts,* —— U.S. ——, 100

S.Ct. at 2539. *See also, e. g., United States v. Alvarez, supra,* (admission of extrajudicial statement violated *both* hearsay rule and sixth amendment confrontation clause); *United States v. West,* 574 F.2d 1131 (4th Cir. 1978) (same indicia of reliability rendered extrajudicial statement admissible under *both* hearsay rule and sixth amendment confrontation clause). *See also id.* at 1139 Widener, J., dissenting) (criticizing *West* majority for equating confrontation clause requirements with hearsay rule requirements).

This difficulty of imprecise demarcation seems inevitable. With *Dutton,* the Supreme Court grounded confrontation values upon the selfsame bedrock of "reliability" that traditionally has been the grounding rationale for virtually all the exceptions to the hearsay rule. When the extrajudicial statement of an unavailable declarant is admitted into evidence against a criminal defendant, confrontation issues are unavoidably implicated.

Evidence that seems likely to fall afoul of the confrontation clause will most often fail to qualify for admission under any recognized hearsay exception. The result is that where the confrontation clause is implicated, it will tend inevitably to place the threshold of admissibility under the applicable hearsay exception at a level that will pass constitutional muster:

> The right of cross–examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the "accuracy of the truth–determining process." *Dutton v. Evans* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970); *Bruton v. United States,* 391 U.S. 123, 135–137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). It is, indeed, "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Of course, the right to confront and to cross–examine is not absolute and may, in

appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *E. g., Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). But its denial or significant diminution calls into question the ultimate " 'integrity of the fact–finding process' " and requires that the competing interest be closely examined. *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

*Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

When inculpatory hearsay is sought to be admitted into evidence under the aegis of a recognized exception to the hearsay rule, the right to confront and cross–examine the declarant is being asked to yield to another legitimate interest in the criminal trial process: the recognition that the trier of fact should be afforded the opportunity to consider relevant hearsay that is sufficiently trustworthy. Nevertheless, the consequent denial or diminution of so essential and fundamental a confrontation value as the opportunity to cross–examine demands that the competing interest to which that value yields be "closely examined." *Ohio v. Roberts,* —— U.S. at ——, 100 S.Ct. at 2538; *Chambers, supra,* 410 U.S. at 295, 93 S.Ct. at 1046.

Thus, a clear distinction must be drawn between statements against penal interest that are offered to exculpate a criminal defendant, as against those that are offered to inculpate him. The admission under Rule 804(b)(3) of against–interest–of–declarant hearsay statements that inculpate a criminal defendant results in the diminution of rights traditionally viewed as essential and fundamental components of an accused person's right of confrontation. Therefore, sixth amendment values demand that the threshold measure of admissibility under Rule 804(b)(3)—the *Alvarez* test—be applied in light of the "close examination" called for in *Chambers v. Mississippi, supra. Ohio v. Roberts,* —— U.S. at ——, 100 S.Ct. at 2538. *See McCormick on Evidence* § 279,

at n.45 (2d ed. Pocket Part 1978); Comment, 66 Cal.L.Rev., *supra*, at 1213–15.[5]

V

■ Following *United States v. Alvarez, supra,* inculpatory statements against penal interest are admissible under Rule 804(b)(3) and the confrontation clause of the sixth amendment only if they meet a three–part test:

(1) The declarant must be unavailable;

(2) The statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and

(3) The statement must be corroborated by circumstances clearly indicating its trustworthiness.

For present purposes, we assume that the hearsay evidence meets the criteria of (1) and (3). We now discuss, in terms of the close examination required, general considerations relevant to the determination of whether criterion (2) of the *Alvarez* test is met—that the statement, insofar as implicating the criminal defendant, is sufficiently against the penal interest of the declarant to warrant its admission under the Rule as reliable.

The government should, of course, be required to show that the statement clearly and directly implicates the declarant himself in criminal conduct. Comment, 66 Cal. L.Rev., *supra*, at 1214. *Cf., United States v. Pena,* 527 F.2d 1356, 1361–62 (5th Cir.

1976) (exculpatory statement insufficiently against penal interest where "there are possible explanations . . . inconsistent with culpability").

In this regard, the "expansive" interpretation of the against–interest requirement adopted by this court in such cases as *United States v. Thomas,* 571 F.2d 285, 288 (5th Cir. 1978) ("[B]y referring to statements that 'tend' to subject the declarant to criminal liability, the Rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant.") may be well suited to test the admissibility of an *exculpatory* statement against the declarant's penal interest, such as was involved in *Thomas.* There, in the absence of conflict with confrontation values, the circumstance that the out–of–court statement would have probative value in a trial against the declarant himself is indicative that it is sufficiently against his penal interest as to be reliable.

However, the *Thomas* test is not appropriate when such hearsay is offered to *inculpate* a criminal defendant on trial. The same hearsay statement, when offered as evidence of the guilt of a criminal defendant, does not as against him necessarily possess the same reliability when subjected to the close examination that is required (see Part IV *supra*) where confrontation rights might otherwise be infringed. Given the advantages readily to be perceived in the incrimination of another for a crime in which the declarant himself is implicated,

5. Indeed, given the very real dangers presented by the admission of inculpatory–as–to–a–third–person statements against the declarant's interest and the confrontation values that are inevitably at stake in such situations, the "close examination" called for in *Chambers* should inform not only the appellate review of the admission of such inculpatory statements, but the initial determination of their admissibility at the trial level as well. In most instances, the admissibility of such statements might well be tested by the trial court in a pretrial or non-jury hearing similar to that established by this court in *United States v. James,* 590 F.2d 575 (5th Cir. 1979) (*en banc*) for testing the admissibility of out-of-court declarations of an alleged coconspirator under Fed.R.Ev. 801(d)(2)(E). *See* Fed.R.Ev. 104(c); 4 Weinstein's Evidence ' 804(b)(3)[02], at 804–98, ' 804(b)(3)[03], at 804-104. Several considerations would suggest such a step: the *Alvarez* test is a test of *admissibility* governed by Fed. R.Ev. 104(a), and not a test of *conditional relevancy* governed by Rule 104(b), *see United States v. James,* 590 F.2d at 578–80, so it is therefore applied by the court rather than by the jury, *id.* at 579–80; inculpatory statements against penal interest present the same great danger of jury prejudice that is raised by co-conspirator statements, *see id.* at 579, and therefore deserve the same meticulous treatment at the trial level; the potential appetite of the hearsay exception here at issue is such that it threatens to consume the coconspirator exception of Rule 801(d)(2)(E), *see United States v. Alvarez, supra,* at 701.

the circumstance that the inculpatory–against–the–accused statement would have probative value against the *declarant* does. not necessarily indicate that, insofar as it implicates the *accused*, it is sufficiently against the declarant's interest so as to be reliable. See Part I *supra; cf., United States v. Gonzalez*, 559 F.2d 1271 (5th Cir. 1977).

For a more specific discussion of the close examination requisite to ascertain that the statement was actually against interest within the intendment of the Rule, insofar as the hearsay statement is offered to inculpate a criminal defendant, see 4 Weinstein's Evidence ¶ 804(b)(3)[02], at 804–97 through –101; and Comment, 66 Cal.L.Rev., *supra*, at 1214–15.

## VI

We turn now to the task of applying this test to the confession that is the focus of this appeal, mindful of the need for close examination of all pertinent circumstances.

 With regard to the second criteria of the *Alvarez* test, we conclude that Aguilar's confession was not sufficiently contrary to his penal interest for the purposes of Rule 804(b)(3).

Aguilar's statement is an explicit confession of criminal activity on his part; it thus clearly and directly implicates him in a crime and is, in this regard, against his penal interest. But our inquiry into the admissibility of his statement cannot end there. A close examination of all the circumstances surrounding the making of the statement is required in order to determine whether it so contravenes the declarant's penal interest that a reasonable person in his position would not have made the statement accusing a third person unless he believed it to be true. Such examination reveals circumstances that significantly undermine this traditional surety of the statement's reliability. This was not a spontaneous declaration made to friends and confederates, but a custodial confession, given under potentially coercive circumstances that could not at trial—and cannot now—be adequately examined. *See United States v.*

*West*, 574 F.2d 1131, 1137 (4th Cir. 1978). There were, in addition, obvious motives for falsification—the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry, the desire for revenge, all might lead an arrestee–declarant to misrepresent or to exaggerate the role of others in the criminal enterprise. Finally, it appears from the record that the declarant was allowed to plead guilty to but one of the five counts upon which he was indicted. *See* R.II: 3650, 111, 233. From these circumstances, which are not counterbalanced by circumstances indicating the reliability of the statement, it is reasonable to suppose that this declarant, and indeed a reasonable person in his position, might well have been motivated to misrepresent the role of others in the criminal enterprise, and might well have viewed the statement as a whole—including the ostensibly disserving portions—to be *in* his interest rather than against it.

For these reasons, then, we must conclude that the confession here at issue lacks the traditional surety of reliability or trustworthiness upon which this hearsay exception is grounded, and is therefore inadmissible in evidence against the defendant, Sarmiento–Perez.

## VII

The unreliability of the confession in this case is predicated upon circumstances that inhere in the making of virtually every custodial confession. It is for this reason that such statements have traditionally been viewed with "special suspicion." *Bruton v. United States*, 391 U.S. 123, 141, 88 S.Ct. 1620, 1631, 20 L.Ed.2d 476 (1968) (White, J., dissenting). *See* Advisory Committee Notes to Fed.R.Ev. 804(b)(3); 4 Weinstein's Evidence ¶ 804(b)(3)[03], at 804–109, –110, –111 & n.32.

For those same reasons, third–party *custodial* confessions, when offered to inculpate a criminal defendant, lack those "indicia of reliability which have been widely

viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970), are thus inherently untrustworthy in the eyes of the sixth amendment, *see Ohio v. Roberts*, —— U.S. at ——, 100 S.Ct. at 2539, and cannot for that reason lie within the intended scope of the hearsay exception for statements against penal interest. *See Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

In *Douglas v. Alabama, supra*, the custodial confession of a separately tried codefendant, who refused (as here) to testify on fifth amendment grounds, was read to the jury. In reviewing *Douglas'* conviction, the Supreme Court held that the indirect admission of the out-of-court declarant's inculpatory statement had violated Douglas' right of confrontation. *Douglas v. Alabama*, 380 U.S. at 419–20, 85 S.Ct. 1074, 1077.

*Douglas* focused on the right of cross-examination as the central feature of the protection afforded by the confrontation clause:

> Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. As the Court said in *Mattox v. United States*,
>
> > "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409.
>
> In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause.

*Douglas v. Alabama*, 380 U.S. at 418–19, 85 S.Ct. at 1076–77.

In *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court held that the right of confrontation was not violated by the admission of a coconspirator's inculpatory out-of-court declaration that was admissible under the *state's* liberal hearsay exception, but inadmissible under the narrower federal hearsay exception. The *Dutton* court focused upon the now-familiar "indicia of reliability" standard as the threshold of admissibility under the confrontation clause, and distinguished *Douglas* as follows:

> This case does not involve evidence in any sense "crucial" or "devastating," as did all the cases just .discussed. It does not involve the use, or misuse, of a confession made in the coercive atmosphere of an official interrogation, as did *Douglas*. . . . It does not involve any suggestion of prosecutorial misconduct or even negligence, as did . . . *Douglas*. . . .

*Dutton v. Evans*, 40 U.S. at 86–87, 91 S.Ct. at 218–19.[6]

*Dutton* does not purport to overrule or modify the holding in *Douglas v. Alabama*.

---

**6.** Much has been made of the "crucial" and "devastating" language in *Dutton* and *Douglas*. The thrust of the language in these decisions may be read as intending nothing more than the observation that the evidence at issue was—or was not—sufficiently damaging to the defense to be considered grounds for reversal:

> This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against the petitioner. The circumstances are therefore such that "inferences from a witness's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."

*Douglas v. Alabama*, 380 U.S. at 420, 85 S.Ct. at 1077 (citations omitted).

To the contrary, in distinguishing *Douglas* as it did, it serves to emphasize what we now read as a key to the subsequent applicability of the *Douglas* holding: that *Douglas* dealt with "a confession made in the coercive atmosphere of official interrogation." Implicit in the distinguishing language quoted from *Dutton*, above, is the suggestion that such confessions do not fit within the class of statements *Dutton* would admit. *See United States v. West*, 574 F.2d at 1137.

Thus, we find support in *Dutton* and *Douglas* for our conclusion, here reiterated, that the custodial confession of an unavailable declarant lacks those indicia of reliability that would render it admissible in evidence against a criminal defendant within the hearsay exception provided by Rule of Evidence 804(b)(3). We do not therefore reach the related issue of whether its admission would likewise fall afoul of the confrontation clause of the Constitution.

### VIII

■ For the reasons delineated above, we conclude that the trial court's admission of the custodial confession of Roberto Aguilar was error. The government contends that it was harmless; we disagree.

We need not conclude that it was error of constitutional proportion in order to find it to be reversible. `See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1976). The confession here at issue added "*critical* weight," *Douglas v. Alabama*, 380 U.S. at 420, 85 S.Ct. at 1077, to the prosecution's case, and thus constituted reversible error as affecting the substantial rights of the accused even under the less rigorous standard provided for errors of less than constitutional magnitude. *See* Fed.R.Civ. P. 61.

The Aguilar confession added critical weight to the prosecution's case against Sarmiento–Perez in two important ways. Its impact on the jury was, in all probability, quite substantial. It was the only direct

evidence identifying the defendant as the source of the illicit drugs, and as a full–fledged participant in the criminal enterprise.

The other evidence connecting Sarmiento–Perez with the crime consisted of hearsay references to "Luis," "Oscar," and "Ybanez's brother–in–law," as testified to by the DEA undercover agents, and the observation of Sarmiento–Perez picking up the principal admitted conspirators, his brother–in–law Ybanez and Aguilar, at the airport, his presence at the Ramada Inn parking lot when the cocaine was apparently obtained by Aguilar and Ybanez, and the retrieval by Aguilar of a white box from the trunk of Sarmiento–Perez's car at that time, as testified to by the DEA surveillance agents. This evidence, by itself, does not, beyond innocent explanation, prove a knowing participation in the criminal offense, or a knowing agreement (the essence of a conspiracy) to join others in a concerted effort to bring about a common end, *United States v. Perez*, 489 F.2d 51, 61 (5th Cir. 1973), cert. denied, 1974, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664).[7] That is, although the circumstantial evidence may be indicative that the accused was a knowing member of the cocaine–distribution scheme, we cannot say that, without the admission of the confession, the jury would not have found the accused was an unwitting accomplice of his brother–in–law rather than a knowing and willing participant in his drug–distribution efforts. In addition, the Aguilar confession was the only evidence adduced from a *participant* in the criminal enterprise that directly implicated Sarmiento–Perez.

For these reasons, we conclude that it is highly probable that the confession carried critical weight in the minds of the jurors, and thus contributed significantly to their verdict.

Further, the confession was a crucial link in the chain of evidence used by the prosecution to establish the predicate for the

---

7. To be convicted of an unlawful conspiracy, the government must prove beyond a reasonable doubt that Sarmiento-Perez had knowledge of the conspiracy and intended to join or associate himself with it. *United States v. Solis*, 612 F.2d 930 (5th Cir. 1980).

admission of the admitted coconspirators' references to Ybanez's supplier as "Luis," "Oscar," or "Ybanez's brother–in–law." As this court noted in *United States v. Grassi*, 616 F.2d 1295, 1300–01 (5th Cir. 1980):

> Evidence submitted at a *James* hearing for the purpose of proving a conspiracy must, of course, be free from hearsay objection; otherwise, a coconspirator's hearsay might bootstrap itself into admissible evidence ... [I]f a coconspirator's extrajudicial declaration is admitted into evidence, the judge must reconsider its admissibility at the conclusion of the trial. His second decision ... is to be made by a higher standard: whether the prosecution, through independent evidence, has demonstrated the defendant's participation in a conspiracy by a preponderance of the evidence. If the prosecution has not prevailed on this point, the judge must decide whether a cautionary instruction will cleanse the record of prejudice or whether a mistrial is required.

The independent evidence to which the trial judge must turn at the conclusion of the trial must, of course, be admissible, and cannot include the extrajudicial coconspirator declarations whose admissibility is at issue. *E. g., United States v. Alvarez*, 584 F.2d at 696.

Without Aguilar's confession and the admitted coconspirators' references to Sarmiento–Perez, only the observations of the DEA surveillance agents and the fact that an unknown voice on the telephone identified itself once as "Oscar" and once as "Luis" remain to connect this defendant to the criminal enterprise. This circumstantial evidence may or may not have been sufficient to submit the cocaine distribution charge to the jury, but it is even more doubtful that by itself the DEA agent's observations established the required prima–facie–conspiracy predicate for the admission of the coconspirator declarations that were in fact presented to the jury. Thus, the impact of this confession upon the jury's verdict is magnified by the fact that it carried with it additional evidence that in the absence of the confession would have been excluded.

For these reasons, we cannot conclude that the admission of Roberto Aguilar's confession was harmless.

## IX

Having determined that the confession at issue in this case was admitted into evidence in violation of the Federal Rules of Evidence,[8] we need not decide whether it also violated the confrontation clause of the sixth amendment, nor address the other points of error[9] urged by the defendant on this appeal.

The conviction of Luis Oscar Sarmiento–Perez is, as to all counts, REVERSED AND REMANDED for a new trial.

---

**8.** The government also urges the admissibility of this confession under the residual hearsay exception provided by Fed.R.Ev. 804(b)(5), *see* note 1, *supra*. We find no merit to this contention. Lacking the indicia of reliability required by the confrontation clause and the traditional surety of trustworthiness embodied in Rule 804(b)(3), this confession necessarily lacks the "equivalent guarantees of trustworthiness" required by the residual exception. *See United States v. Alvarez*, 584 F.2d at 702 n.10.

**9.** Among the points of error raised on this appeal is the contention that the trial court erred in admitting the laboratory analysis report identifying the "white powder" as cocaine.

The chemist who conducted the analysis that was the subject of that report was not present at the trial. Nevertheless, the report was admitted as a business record, and a supervisory chemist from the testing laboratory was allowed to testify that the substance was cocaine, even though he had neither participated in, nor observed, the actual analysis.

While our resolution of this case makes it unnecessary for us to decide whether the trial court's ruling in this regard violated the defendant's confrontation rights, we do note that we have serious reservations about the propriety of admitting such evidence under these circumstances as business records under Fed.R.Ev. 803(6), (8), and (24). *See United States v. Oates*, 560 F.2d 45 (2d Cir. 1977).