**UNITED STATES of America, Plaintiff,**

**v.**

**Victor POSNER and William Scharrer, Defendants.**

**No. 82–352–CR–EPS.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 19, 1984.

See also, D.C. 594 F.Supp. 916, D.C. 594 F.Supp. 930.

K. Chris Todd, Neil Cartusciello, Asst. U.S. Attys., S.D.N.Y., New York City, for plaintiff.

Edward Bennett Williams, Richard M. Cooper, Mary G. Clark, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPELLMAN, District Judge.

Victor Posner and William Scharrer were charged in a twelve count indictment with criminal violations of the federal income tax laws. The gist of the offenses against them was that Scharrer willfully provided Posner with falsely inflated appraisals of certain land that Posner donated to the Miami Christian College and that Posner willfully used these falsely inflated appraisals to take improper deductions on his tax returns for the years 1975–1979.

The case proceeded to trial on July 26, 1984. On August 1, 1984, the Government offered into evidence a letter written by Scharrer to one Loren Felabom, the business manager of Miami Christian College. Scharrer stated in this letter that his $2 million dollar appraisal of the property Posner donated was "unrealistic inasmuch as it is being developed for tax purposes." Scharrer also stated that "[f]rom a realistic market price" $50,000 an acre, *i.e.*, $800,000 for the 16 acres, "would probably be it." The Court ruled that this letter was not admissible as evidence against Posner because it was hearsay and did not fit into any exception to the hearsay rule. Moreover, the Court ruled that, in a joint trial, an instruction by the Court that this letter was only admissible against Scharrer was not sufficient to adequately cure the prejudice that would adhere to Posner from the admission of this letter into evidence. Accordingly, upon Posner's motion for a severance, Posner was granted a separate trial.[1]

The Government has now filed a motion *in limine*, prior to the Posner trial, requesting this Court to reconsider its rulings on the letter and other documents made during the earlier trial. In addition, the Government requests this Court to rule, in advance of trial, as to the admissibility of other items that have not previously been offered into evidence. For the reasons detailed below, the Court will stand

---

1. Scharrer was subsequently convicted on all counts.

on its previous ruling as to the letter. Because the Government has not provided sufficient reasons for this Court to rule, in advance of trial, on the other matters raised in the motion, the Court will decline at this time to rule on the admissibility of these documents.

SCHARRER'S LETTER TO FELABOM

At the original trial, and again in this motion, the Government argues that the July 29th letter from Scharrer to Felabom is admissible against Posner either as a statement made by a coconspirator in furtherance of the alleged conspiracy pursuant to Rule 801(d)(2)(E), Federal Rules of Evidence, or as a statement against penal interest under Rule 804(b)(3), Federal Rules of Evidence. Neither rationale is convincing.

A. *The letter was not "in furtherance" of the conspiracy*

Conspiratorial declarations are admissible against a party under Rule 801(d)(2)(E) when it has been shown by a preponderance of the evidence, independent of the evidence itself:

(1) that a conspiracy existed;

(2) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were both members of the conspiracy; and

(3) that the statement was made during the course and in furtherance of the conspiracy.

*United States v. James,* 590 F.2d 575, 582 (5th Cir.1979) (*en banc*), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).[2]

■ The requirement that a co-conspirator's statement must be pursuant to and in furtherance of a conspiracy is implicit in the rationale for why these statements are not considered hearsay. Declarations of a co-conspirator are competent against an accused "because they are a part of the execution of the plan and have been impliedly authorized by the others." *United States*

*v. Kelley,* 105 F.2d 912, 916 (2d Cir.1939). *See also Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

After conducting a "James" hearing in this case, the Court ruled that there was sufficient evidence that a conspiracy existed and that Scharrer and Posner were both members of this conspiracy. The Court found, however, that the letter was not admissible against Posner because it was not made "in furtherance" of the conspiracy.

The Government here repeats the argument it made at trial that Scharrer wrote the July 29th letter to Felabom in an effort to "conceal" the alleged conspiracy to claim a fraudulent deduction. According to the Government, the letter "provided a cover story that allowed the conspiracy to continue." The Government claims that Scharrer's statement that his own appraisal was "unrealistic inasmuch as [it was] developed for tax purposes", was designed to "allay suspicions" as to the discrepancy between the $2 million dollar appraisal and the realistic market value of $800,000. The Government reasons that Scharrer must have known when he wrote the letter that a "cover story" would be needed, because the College was already considering putting the land on the market.

The Government's theory of admissibility is recognized in that statements made by a co-conspirator to allay suspicions can be "in furtherance" of a conspiracy and therefore admissible under the co-conspirator's exception to the hearsay rule. *See, e.g., United States v. Griggs,* 735 F.2d 1318, 1325 (11th Cir.1984); *United States v. Miller,* 664 F.2d 94, 98 (5th Cir.1981), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982); *United States v. Del Valle,* 587 F.2d 699, 704 (5th Cir.), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 274 (1979). Moreover, this Court is not unmindful that the " 'in furtherance of the conspiracy' standard must not be applied too strictly, 'lest we defeat the pur-

---

**2.** The Eleventh Circuit applies Fifth Circuit precedent established before September 30, 1981. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

pose of the exception.' " *United States v. Miller*, 664 F.2d 94, 98 (5th Cir.1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982) (quoting *United States v. James*, 510 F.2d 546, 549 (5th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 1 (1975)).

■ But, from the record in this case, the Court finds absolutely no support for the proposition that Scharrer wrote the letter in question in order to "allay suspicions."

The Government has not presented any evidence to this Court that Felabom or any other members of the Board of the Miami Christian College were ever disturbed by the discrepancy between the appraisal of the land Scharrer did for Posner and the estimated value he placed on the land for the College's books. The Government claims that the "best evidence" that the letter was a successful cover-up is the fact that no officers or trustees of the College ever asked any questions about the gross disparity between Scharrer's $2 million figure and the $512,000 that the property could have sold for in 1977.[3] This argument merely begs the question.

But even putting aside the complete lack of evidence that the officers and trustees were *ever* concerned about the discrepancy, an examination of the letter itself demonstrates that Scharrer was not providing a plausible explanation that would "allay suspicions." Indeed, quite the opposite is true. The letter could only serve to create suspicions for there is no evidence that any of the officers or trustees of the College even knew of Scharrer's $2 million appraisal except as a result of Scharrer volunteering this information to them. Since Scharrer actually attached a copy of his appraisal to the letter to Felabom, under the Government's theory, this Court would have to find that Scharrer was simultaneously disclosing his fraudulent scheme and attempting to allay suspicions about it. This, the Court cannot and will not do.

■ This Court finds that a letter that "spilled the beans" to Felabom, who was neither a participant in the conspiracy nor, at the time the letter was written, a possible witness against it, could not have served any conspiratorial purpose. In its own context, Scharrer's letter, like the co-defendant's admission of ownership of a distillery held inadmissible in *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970), "could not possibly advance any object of the conspiracy." *Id.* at 613. *See also United States v. Means*, 695 F.2d 811 (5th Cir.1983) (error to admit co-conspirator's statement to Government witness regarding alleged scheme, which was "mere idle conversation" not in furtherance of the conspiracy); *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981) (error to admit co-conspirator's retrospective statement made in conversation about past event); *United States v. Castillo*, 615 F.2d 878, 882–83 (9th Cir.1980) (error to admit statement that was "nothing more than a casual admission to someone he decided to trust"). Accordingly, the letter cannot be admitted against Posner under the co-conspirator's exception to the hearsay rule.

**B.** *The letter is not admissible as a declaration against penal interest*

The Government argues, alternatively, that the letter written by Scharrer to Felabom is a declaration against penal interest. In this view of the letter, the Government claims that Scharrer "admitted" that his appraisal for $2 million dollars was "highly inflated" and was intended to be used by Posner for improper tax purposes. The Government argues that, because the letter contains "a statement by Scharrer that tended to expose him to criminal liability," it should be admissible against Posner under Fed.R.Evid. 804(b)(3) if Scharrer is unavailable as a witness.

■ As a preliminary matter, this Court finds that any ruling on this theory of admissibility is necessarily premature because, at this point, there is no way of knowing whether Scharrer will be available

---

**3.** The College entered into a contract to sell the land in question for $512,000 in 1977.

to testify at Posner's trial. Indeed, we will not know whether Scharrer is "available" to the Government until he is subpoenaed to Posner's trial and called to testify. Since the declaration against penal interest exception is applicable only when a witness is unavailable to testify at trial, this Court cannot really make a determination as to the admissibility of the letter under this exception prior to trial.

■ This Court has previously ruled, however, in the context of the joint trial, that even assuming the unavailability of Scharrer, the letter does not fall within this exception to the hearsay rule. The Court found that the letter fails to meet the "against interest" test because, at the time the letter was written, no tax deductions for the donated land had been claimed. The Court will stand by this ruling. When a statement is being offered against a defendant in a criminal trial, as it is here, constitutional confrontation clause values require the Court to strictly apply the "against interest" test.

Rule 804(b)(3) provides:

*Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The rationale for the "against-interest" exception to the hearsay rule is that a person will not make a statement that would be damaging to himself unless it is true. And it is this same rationale that would provide the statement with sufficient "indicia of reliability" to meet the threshold of admissibility under the confrontation clause. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Obviously, if the declarant does not believe the statement to be against his interest, this rationale fails. *See* 4 Weinstein & Berger, *Evidence* 804(b)(3)[02] at p. 98 (1981).

When the declaration against penal interest exception to the hearsay rule was adopted as part of the Federal Rules of Evidence in 1975, Congress was acutely aware that an against-penal-interest statement offered against the accused in a criminal case raised serious constitutional evidentiary issues. S.Rep. No. 93–1277, 93d Cong., 2d Sess., *reprinted in* [1971] U.S. CODE CONG. & AD.NEWS 7051, 7068. The draftsmen of the new rule "left to the courts the task of delineating prerequisites to the admissibility of inculpatory against-interest hearsay," recognizing that "the central underpinning of such a safeguard must be the confrontation clause of the United States Constitution." *United States v. Alvarez,* 584 F.2d 694, 700 (5th Cir.1978).

After reviewing the requirements of the confrontation clause as interpreted in recent decisions of the Supreme Court, the *Alvarez* Court stated that "the admissibility of inculpatory declarations against interest requires corroborating circumstances that 'clearly indicate the trustworthiness of the statement.'" 584 F.2d at 701. The Court then looked to decisions that applied the "trustworthiness" standard to statements that tended to exculpate the defendant and stated that a determination of trustworthiness under this exception to the hearsay rule involves both the "probable veracity of the in-court witness" and the "reliability of the out-of-court declarant." *Id.* As to the "reliability" element, the Court noted that "the traditional surety of reliability for the hearsay exception" is that the statement strongly contravenes the declarant's interest. *Id.*

The Fifth Circuit again considered the interaction between constitutional confrontation values and the against-penal-interest exception to the hearsay rule in *United States v. Sarmiento-Perez,* 633 F.2d 1092 (5th Cir. Unit A 1981). The Court observed that "[t]he admission under Rule 804(b)(3)

of against-interest-of-declarant hearsay statements that inculpate a criminal defendant results in the diminution of rights traditionally viewed as essential and fundamental components of an accused person's right of confrontation." *Id.* at 1100. The Court therefore found that "a clear distinction must be drawn between statements against penal interest that are offered to exculpate a criminal defendant, as against those that are offered to inculpate him." *Id.* The "expansive" interpretation of the "against interest" requirement that applies to exculpatory declarations against interest under Rule 804(b)(3) "is not appropriate when such hearsay is offered to *inculpate* a criminal defendant on trial." *Id.* at 1101. When the declaration is used against a defendant, confrontation rights are implicated, and it is therefore not sufficient that the statement merely have "probative value" in a trial against the declarant. The Government must demonstrate that "the statement *clearly and directly implicates* the declarant himself in criminal conduct." *Id.* (Emphasis added).

■ When Scharrer's letter is analyzed under these standards, it is plain that it cannot be admissible against Posner in a criminal trial. First, as the Court previously found at the joint trial, the letter cannot meet the "against interest" test because at the time the letter was written in July of 1976, Posner had not even taken a tax deduction for the land he donated to the Miami Christian College. The evidence at trial demonstrated that Posner did not file any tax returns with the deduction in question until October, 1976.

But even more importantly, notwithstanding the Government's characterization of the letter as the "smoking gun" in this case, the letter itself is not "clearly and directly" against Scharrer's penal interest. There is a reasonable explanation for what he wrote to Felabom that does not implicate Scharrer in a criminal conspiracy and would not expose him to criminal liability. And a statement is insufficiently against penal interest where "there are possible explanations ... inconsistent with culpabili-

ty." *United States v. Pena,* 527 F.2d 1356, 1361–62 (5th Cir.1976).

When Scharrer testified at his own trial, he explained to the jury, as he had to the grand jury, what he meant when he wrote that his appraisal was "probably unrealistic in that it was being developed for tax purposes." Scharrer began his explanation by testifying that Felabom had sent him a letter in which Felabom requested that Scharrer provide the College's accountants with information regarding the donated land. The letter specifically stated that the accounting firm requested information about the current zoning status of the property and the fair market value of the property based upon current zoning restrictions on use. On a form supplied by the accounting firm, Scharrer wrote that the current zoning status was EUM and modified one acre estates; that the fair market value based on the current zoning status was $800,000; and that the restrictions on the use of the land required the land to be used for single family use.

Scharrer also explained to the jury that he knew that Posner had donated the land as a charitable gift and that Posner would need to put a value on the gift. He therefore appraised the land, in accordance with standard tax practice, at its highest and best use, taking into consideration the possibility that the land would be rezoned as commercial property. In his letter to Felabom, he stated that the appraised value of the land was probably unrealistic because he knew that the college could not sell the property for $2 million zoned EUM—the existing zoning. Although Scharrer believed that it was reasonably possible to rezone the property commercially, he felt that

> [t]he college would never get the property rezoned for commercial use. At the time they were trying to locate to the property and even if they had decided to get it rezoned for business use at that time, they would have had to give up their dream of relocating to the property and gone into the real estate business. This would not have been realistic be-

**930**

cause it would have jeopardized their tax free status as a college, so that didn't make any sense. (Tr. 1291)

 Given this explanation, it cannot be said that Scharrer's statements in his letter to Felabom "clearly and directly implicate[ ] [him] ... in criminal conduct." *Sarmiento-Perez* 633 F.2d at 1101. Even if the letter could be admitted into evidence as a statement against penal interest, in the context of this case, it would be a violation of Posner's Sixth Amendment right to confrontation to do so. For it is precisely this explanation of the letter that Posner would be entitled to elicit on cross-examination of Scharrer if he were available to testify. Congress never intended to substitute the Sixth Amendment to the United States Constitution with this rule of evidence.

## THE OTHER EVIDENCE

 In addition to Scharrer's letter, the Government requests this Court to rule, prior to trial, as to the admissibility of other documents. Some of these documents were previously ruled upon by the Court during Scharrer's trial; other documents have not been previously offered.

It is within the Court's discretion to rule on evidentiary matters prior to trial. This Court has found that, as a general rule, it is a better practice to rule on questions of admissibility as they arise at trial. Prior to trial, there is no way of knowing if the evidence will actually be offered at trial and for what purpose. Moreover, even if it is offered and is admissible for a certain purpose, there is no way of knowing whether its probative value outweighs its prejudicial effect. Rule 403, Federal Rules of Evidence.

Thus, unless good cause is shown, this Court is of the opinion that such matters should be ruled on as they come up at trial; not in the abstract and in anticipation of some hypothetical circumstance that may or may not develop.

The Government has not provided this Court with any reason why these other matters should be ruled upon at this time.

Rules 103(c) and 104(c) of the Federal Rules of Evidence will provide sufficient safeguards at the trial of this matter for determining the admissibility of this evidence outside the hearing of the jury.

Unlike Scharrer's letter, these documents are not characterized by the Government as critical evidence to its case against Posner that should be ruled upon prior to trial so that a decision on these documents adverse to the Government could be appealed. The Court therefore will decline to rule at this point and will consider all other evidentiary matters at the time of trial.