**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary Keith VERNOR,**
**Defendant–Appellant.**

No. 89–4533.

United States Court of Appeals,
Fifth Circuit.

May 29, 1990.

Howard Dyer, III, Dyer, Dyer, Dyer & Jones, Greenville, Miss. (court-appointed), for defendant-appellant.

John Marshall Alexander, Asst. U.S. Atty., Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before POLITZ, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

After joining with his father in a clumsy and botched robbery, and leaving a trail of signals worthy of a hired trail blazer, the time came for Gary Keith Vernor to answer to a jury, which, on the second time around, convicted him of conspiracy to commit armed bank robbery and of aiding and abetting his father, Fred Willard Vernor, Sr. ("Fred"), in an armed bank robbery. Gary contends on appeal that his sixth amendment right to confront the witnesses against him was violated by the admission into evidence of three custodial confessions made by his father. We hold that the requirements of the confrontation clause were satisfied because Gary's father's statements exhibit sufficient indicia of reliability, and the trustworthiness of the statements is corroborated by other evidence.

## I

On the morning of December 18, 1987, father and son left Dumas, Arkansas, intent on robbing some bank somewhere. They headed south, and ended up in Greenville, Mississippi. At approximately 11:20 a.m., they executed the less-than-perfect crime at the Highway Branch of Trustmark National Bank, at the intersection of Highway 1 and Moore Street in Greenville, Mississippi. The robber (later identified as Gary's father, Fred), entered the bank and handed a note to bank teller Ruthie Morris. It was written on the stub of Gary's unemployment compensation check. The note stated: "I have a gun pointed at you. Place all your bills on the counter. Do not touch any button. Do not panick [sic]." She then placed several stacks of twenty dollar bills on the top and bottom of the bait bills and a dye package, and handed them to Fred, who wisely insisted upon retrieving his demand note. Fred stuffed the stacks of bills inside his shirt and hurriedly left the bank. When Fred was approximately eight to ten steps outside the front door of the bank, the dye package exploded. The explosion spewed red dye on Fred. It caught him unexpected. He dropped both the money and the demand note in the street. His plans having changed, his priorities changed. He left the money and the note in the street and took off running. Though Fred was not pursued, Morris did go to the front door of the bank where she saw him run in an easterly direction on Moore Street and then turn left two blocks later at Seventh Street. Cozetta Gray, a bank teller in the position next to Morris, went to the back of the bank, where she saw the robber headed east on Moore Street, but lost sight of him when he turned left on Seventh Street.

John Merrill, a customer on his way to the bank, saw the robber drop the dye package after it exploded. While he was standing on the street, an older model Datsun 280Z, dull red or burgundy in color, with a young white man driving, drove up with the passenger door open. Merrill then saw the man who had dropped the dye package jump into the passenger side of the Datsun. He noticed that the car had an Arkansas license plate. Clara Howard, Merrill's girlfriend, also saw the getaway car, which she described as a dull red 280Z, with an Arkansas license plate, driven by a slender, young white man in his early thirties with medium-length brown hair.

Still another witness, Betty Stuckett, who lives two blocks away from the bank at the corner of Moore and Seventh

Streets, where the robber was seen turning left, got a better look at the driver of the getaway car. Stuckett was watching television in the front room of her house when she noticed an older man coming around the corner from Moore Street clutching his hands in front of him. She then noticed the dull red Datsun 280Z automobile at a dead stop on Seventh Street approximately 30 to 35 feet north of her house. Stuckett saw the older man get into the car. The car then proceeded at a slow speed directly in front of Stuckett's house, which is located twenty feet off the curb of Seventh Street. Stuckett noticed that the car had black shutters on the back window and had an Arkansas license plate. The window was down on the driver's side of the car, and Stuckett had a clear view of the driver from the time she first saw the car 30 to 35 feet away on Seventh Street, until the older man was inside the car. Stuckett continued to have a clear view of the driver while the car drove slowly toward and then directly in front of her house. At trial, Stuckett positively identified Gary Keith Vernor as the driver of the dull red Datsun 280Z.

When the police examined the demand note, they noticed that it was written on an unemployment compensation check stub. The name and address on the check stub had been scribbled through and obliterated, but the stub contained a computer control number on the upper right hand corner. The police contacted the Arkansas Employment Security Commission, which furnished the corresponding name and address: Gary Vernor, 3605 Shamrock, Pine Bluff, Arkansas. That information was verified later through the use of infrared photography that revealed the printed name and address beneath the scribbled obliteration. At trial, a fingerprint expert identified three latent fingerprints taken from the demand note as Gary's prints.

At trial, Gary admitted that he owned the Datsun 280Z that had been identified as the getaway car.

On December 19, 1987, the day after the robbery, Gary was arrested by the Dumas Police Department. Gary's father, Fred, was arrested later the same day. Hard to believe, Fred was still wearing the same clothes he had worn during the robbery, with red/orange dye still on his hands, body, and clothing. At trial, bank tellers Morris and Gray positively identified Fred. Stuckett identified Fred as the man who got into the dull red Datsun 280Z driven by Gary. Photographs taken from the bank surveillance camera film also clearly show that Fred was the bank robber.

On December 20, 1987, Fred was interviewed by Lieutenant Ken Winter of the Greenville Police Department and FBI Special Agent James A. Larue. Fred, after being advised of and waiving his *Miranda* rights, gave the following statement:

I, Fred Willard Vernor, Sr., having been advised of the identity of S.A. James A. Larue, FBI, Greenville, Mississippi, and Lieutenant Ken Winter, Greenville, Mississippi, Police Department, and after being advised of my constitutional rights, do hereby furnish this signed statement, admitting that no coercion has been used to elicit same. I am 60 years old and have completed the 10th grade and can read and write. I was out of money again by 12–18–87 and had to pawn a pen and pencil set. I don't know how Gary spent his money. On 12–18–87 Gary again picked me up in his car in Dumas. I was at the Roadrunner Service Station. We rode around for a while and then drove south on Highway 65. We eventually arrived in Greenville, Mississippi, with the intention of robbing a bank. We chose the Trustmark branch bank on Highway 1 at random. Gary gave me a stub from an Arkansas Employment Security check after he inked out his name and address. Again I wrote a demand note. I was wearing a red knit hat, blue jeans, cream colored striped shirt, with a blue plaid shirt over it. Gary dropped me off on a side street about a block behind the bank. He was to drive around and then I would meet him there after the robbery. I entered the bank and went to the first teller. I gave her the note, told her I wanted all 20–dollar bills, and that I didn't want a bag. She gave me a stack of bills and I

retrieved my note and left. I got to the street and the dye pack exploded. I was holding the money and note close to my belt. The force of the explosion blew the money and note out of my hands, stained my hands, belly, and shirts. I kept on running and was picked up by Gary a block away. He thought I was shot when he saw the dye stains, but I told him it was just dye. We drove back to Dumas and Gary dropped me off at the Roadrunner as he had to be at work at 3:30 p.m. at Century Tube Manufacturing in Pine Bluff. I was arrested in Dumas, Arkansas, on the evening of 12–19–87 and still had the dye stains on my body and was still wearing the dye stained clothing. I admitted at that time that Gary and I had robbed the bank in Greenville, Mississippi, and waived extradition to return to Mississippi. I have read this statement consisting of this page and three others and signed it, as it is true.[1]

On December 23, 1987, Dumas Police Chief Richard Bonds and Gary's sister, who was retrieving Gary's personal belongings from his Datsun 280Z, which had been impounded by the Dumas Police Department, found a Clerke .22 caliber revolver, with red dye stains on the frame, cylinder, and hammer.[2]

## II

A federal grand jury returned a two-count indictment charging Fred and Gary with conspiracy to commit armed bank robbery and aiding and abetting each other in an armed bank robbery on December 18, 1987, at the Greenville, Mississippi Highway Branch of Trustmark National Bank. On August 29, 1988, Fred and Gary were tried together. The jury found Fred guilty on both counts, but was unable to reach a verdict as to Gary, and a mistrial was declared as to him.

On February 27–28, 1989, Gary was tried alone. During the trial, Fred, who had been convicted in the earlier trial, but had not yet been sentenced, was called as a witness by the government. Fred asserted his fifth amendment privilege not to incriminate himself and refused to testify. The trial court ruled that Fred was unavailable as a witness pursuant to Fed.R.Evid. 804(a)(1). The government then offered the statements made by Fred as statements against interest pursuant to Fed.R. Evid. 804(b)(3). The trial court held a hearing outside the presence of the jury, and ruled that the statements were admissible as statements against interest under Rule 804(b)(3). Fred's statements were read to the jury by Lieutenant Winter and Special Agent Larue, the officers who took the statements.

Gary testified in his own behalf. He denied any knowledge of the bank robbery and stated that he knew of no reason why his father said that he, Gary, had participated in the robbery as the driver of the getaway car. Gary attempted to prove an alibi by testifying that he had been asleep in Dumas, Arkansas, at the time of the robbery. Gary testified that when he awoke at approximately 3:00 p.m. on December 18, 1987, both his father and his Datsun 280Z were present at his house in Dumas. Gary's former girlfriend, Deborah Edwards, testified that she saw Gary at approximately 6:30 a.m. on December 18, 1987, and again after midnight, but she did not see him between those times.

The jury returned a verdict of guilty on both counts. Gary was sentenced to serve 41 months, the minimum sentence under the Sentencing Guidelines. Gary appeals.

## III

Gary argues that the admission of his father's post-arrest custodial statements that directly implicated him in the robbery, as substantive evidence of his guilt, violat-

---

1. Following his arrest on December 19, 1987, Fred gave a similar statement to officers of the Greenville, Mississippi Police Department.

2. On January 8, 1988, Fred gave another statement to FBI agent Larue identifying the dye-stained Clerke .22 caliber revolver found in Gary's car as the gun he had used to rob the bank.

ed his sixth amendment right to confront the witnesses against him.

The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." As the Supreme Court has noted, a literal reading of the confrontation clause "would require, on objection, the exclusion of any statement made by a declarant not present at trial." *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court has rejected such a literal interpretation as both unintended and too extreme, and held that

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.

### A

■ The government called Fred as a witness, but he invoked his fifth amendment privilege not to incriminate himself and refused to testify. Fred was thus unavailable as a witness. *See United States v. Briscoe*, 742 F.2d 842, 846 (5th Cir.1984); *United States v. Robinson*, 635 F.2d 363, 364 (5th Cir.), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3050, 69 L.Ed.2d 419 (1981); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978). *See also* Fed.R.Evid. 804(a)(1) (" '[u]navailability as a witness' includes situations in which the declarant ... is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement").

### B

■ Hearsay statements are admissible under the confrontation clause only if the statements bear "adequate indicia of reliability." *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. Reliability may be inferred when the statement is admitted pursuant to a "firmly rooted exception to the hearsay rule." *Id.; see Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987) ("the co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that ... a court need not independently inquire into the reliability of such statements"). Evidence that does not fall within a "firmly rooted hearsay exception" is presumptively unreliable and inadmissible for confrontation clause purposes unless "it is supported by a 'showing of particularized guarantees of trustworthiness.' " *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986) (quoting *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539).

■ The statements at issue here were admitted pursuant to Fed.R.Evid. 804(b)(3), the exception to the hearsay rule for declarations against interest. Rule 804(b)(3) authorizes a trial judge to admit, as an exception to the hearsay rule, "[a] statement which ... at the time of its making ... so far tended to subject [the declarant] to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true," provided that the declarant is "unavailable as a witness." The Supreme Court has not decided whether the exception for declarations against penal interest is a "firmly rooted exception" to the hearsay rule. Although the four dissenting justices in *Lee v. Illinois*, 476 U.S. 530, 551–52, 106 S.Ct. 2056, 2067–68, 90 L.Ed.2d 514 (1986) (Blackmun, J., dissenting) reached that conclusion, the majority rejected the state's categorization of the hearsay involved in that case as a simple "declaration against penal interest," noting that "[t]hat concept defines too large a class for meaningful Confrontation Clause analysis." *Id.* at 544 n. 5, 106 S.Ct. at 2064 n. 5. On the other hand, the Supreme Court has consistently held that accomplices' confessions that incriminate defendants, such as the state-

ments at issue in this case, are presumptively unreliable. *E.g., id.* at 541, 106 S.Ct. at 2062. We therefore "decide this case as involving a confession by an accomplice that incriminates a criminal defendant." *Id.* at 544 n. 5, 106 S.Ct. at 2064 n. 5.

## C

We now consider whether Fred's statements bore adequate "indicia of reliability" and were supported by a "showing of particularized guarantees of trustworthiness" sufficient to overcome the presumption of unreliability and satisfy the requirements of the confrontation clause.[3]

■■■ The question whether a hearsay statement bears sufficient indicia of reliability to satisfy the requirements of the confrontation clause depends on the particular circumstances under which the statement was made. *See United States v. Layton,* 855 F.2d 1388, 1405 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). The traditional surety of reliability for a statement against penal interest is the fact that the statement "so far tended to subject [the declarant] to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be

true." Fed.R.Evid. 804(b)(3). The portions of Fred's statements concerning his own participation in the bank robbery clearly "tended to subject him to ... criminal liability," and we have no difficulty concluding "that a reasonable man in his position would not have made the statement[s] unless he believed [them] to be true." Although the reliability of Fred's statements regarding his own actions is thus established, the portions of his statements implicating Gary are nevertheless presumptively unreliable:

> [A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.

*Lee v. Illinois,* 476 U.S. at 545, 106 S.Ct. at 2064. In *United States v. Sarmiento-Perez,* 633 F.2d 1092, 1102 (5th Cir.1981), this court noted that custodial confessions have been viewed with "special suspicion" and that "[a] close examination of all the circumstances surrounding the making of the statement is required in order to determine whether it so contravenes the declarant's penal interest that a reasonable person in

---

**3.** In *United States v. Sarmiento-Perez,* 633 F.2d 1092 (5th Cir.1981), this court, after noting the difficulty of discerning the precise line of demarcation between the indicia of reliability that are sufficient to overcome confrontation problems and those that are sufficient to place an extrajudicial statement within the scope of a recognized exception to the hearsay rule, held that

> inculpatory statements against penal interest are admissible under Rule 804(b)(3) and the confrontation clause of the sixth amendment only if they meet a three-part test:
>
> (1) The declarant must be unavailable;
>
> (2) The statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and
>
> (3) The statement must be corroborated by circumstances clearly indicating its trustworthiness.

633 F.2d at 1101. *See also United States v. Garcia,* 897 F.2d 1413 (7th Cir.1990) (sufficient corroborating evidence for admissibility under Rule 804(b)(3) also satisfies the required indicia of reliability for confrontation clause purposes).

The Second Circuit, which also requires a declaration against penal interest that inculpates a criminal defendant to be corroborated by circumstances indicating its trustworthiness, has held that the declaration against interest hearsay exception is a firmly rooted hearsay exception. *See United States v. Katsougrakis,* 715 F.2d 769, 775 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). *See also United States v. Seeley,* 892 F.2d 1, 2 (1st Cir.1989) ("the exception for declarations against penal interest would seem to be 'firmly rooted'"). The Ninth Circuit has noted that those circuits which have read "the corroboration expressly required for exculpatory statements into the rule as applied to inculpatory statements [have done so] in order to satisfy the confrontation clause." *United States v. Monaco,* 735 F.2d 1173, 1176 (9th Cir.1984). Although we express no opinion as to whether Rule 804(b)(3) is a "firmly rooted" hearsay exception, we note that this circuit's corroboration requirement for the admissibility of inculpatory statements against penal interest under Rule 804(b)(3) mirrors the trustworthiness requirements of the confrontation clause.

his position would not have made the statement accusing a third person unless he believed it to be true."

A close examination of all the circumstances surrounding Fred's statements convinces us that he would not have made the accusations against Gary unless he believed that they were true. Faced with overwhelming evidence of his own guilt, and after being caught literally "red-handed," Fred unambiguously took full responsibility for his own part in the bank robbery. He made no attempt to minimize his own role or to shift the blame from himself to Gary. There is nothing in the record to support an inference that Fred made the statements implicating Gary in an attempt to avenge himself. The policeman and the FBI agent to whom Fred's statements were given both testified at trial and were cross-examined concerning the contents of the statements and the circumstances surrounding the making of the statements. There is nothing in the record that indicates that Fred was motivated by a desire to curry favor with his interrogators. There is no evidence that the police or FBI agents made any promises to Fred or that they gave him any reason to believe that it would help him if he inculpated his son, Gary. Although Fred was in custody when he made the statements at issue, the record indicates that his statements were made voluntarily. Fred was fully informed of his *Miranda* rights, and waived those rights, prior to making the statements. There is no evidence of any plea bargaining, and Fred did not enter into any plea agreements with the government. Fred's statements were made at a time when the bank robbery was still fresh in his mind.

■ The district court found that Fred's statements implicating Gary were corroborated by other evidence that clearly indicated the trustworthiness of the statements. The district court's determination as to the trustworthiness of an out-of-court statement will be upheld unless it is clearly erroneous. *United States v. Briscoe*, 742 F.2d 842, 846–47 (5th Cir.1984). The overwhelming evidence corroborating Fred's version of his own participation in the bank robbery is set forth in detail earlier in this opinion, and we will not discuss it again here.

The portions of Fred's statements implicating Gary are also sufficiently corroborated by other circumstantial evidence of Gary's guilt. Fred stated that the driver of the getaway car was his son, Gary. This portion of the statement is fully corroborated by the testimony of Betty Stuckett. Although they could not specifically identify Gary as the driver, Diane Jones, a teller at another Greenville bank who had seen Gary's Datsun 280Z drive suspiciously past her bank earlier on the morning of the robbery, and Clara Howard testified that the dull red Datsun 280Z was driven by a young white man.

Fred stated that he and Gary used Gary's red Datsun 280Z as the getaway car in the robbery. Gary's car was described in detail by witnesses Betty Stuckett, John Merrill, Clara Howard, and Diane Jones, all of whom later identified the car from photographs. Although he denied driving the car, Gary admitted that he owned the Datsun 280Z identified as having been used in the robbery.

Fred stated that Gary had furnished him with the check stub on which the demand note was written and that Gary had marked through his name and address on the stub. The proof at trial showed that the demand note was written on the back of an unemployment check stub with Gary's name and address obliterated, and the demand note contained three latent fingerprints identified as Gary's prints.

Finally, Fred stated that, during the robbery, he used a .22 caliber pistol that was in Gary's car. That dye-stained gun was later found in Gary's car, and Gary admitted that the gun belonged to him.

In the light of all of the foregoing circumstances, we conclude that the trustworthiness of Fred's statements is clearly established by corroborating circumstances, and that there are sufficient indicia of reliability to satisfy the requirements of the confrontation clause. We therefore hold that the district court did not err in admit-

ting Fred's statements. The judgment of the district court is

AFFIRMED.