UNITED STATES, Appellee

v.

Shawn T. BRIDGES, Airman First Class
U. S. Air Force

No. 00-0456

Crim. App. No. 33369

United States Court of Appeals for the Armed Forces

Argued December 5, 2000

Decided May 29, 2001


CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. SULLIVAN and BAKER, JJ., each filed an opinion concurring in the result.

<u>Counsel</u>

For Appellant: Major Steven P. Kelly (argued); Colonel James R. Wise and Lieutenant Colonel Timothy W. Murphy (on brief).

For Appellee: Captain James C. Fraser (argued); Colonel Anthony P. Dattilo, Lieutenant Colonel William B. Smith and Major Lance B. Sigmon (on brief).

Military Judge: Mary M. Boone

<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted in June 1998 by officer and enlisted members of assaulting his 22-month-old daughter and 9-month-old son, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 USC § 928.  The convening authority approved a sentence of a bad-conduct discharge, 6 months' confinement, and reduction to the lowest enlisted grade.  The Court of Criminal Appeals affirmed the findings and sentence.  52 MJ 795 (2000).  We granted review of the following issues:

> I.  WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT APPELLANT WAIVED HIS SIXTH AMENDMENT RIGHT TO CONFRONT JULIA BRIDGES, THE PROSECUTION'S KEY WITNESS.
>
> II.  WHETHER APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM WAS VIOLATED WHEN HIS WIFE'S STATEMENT TO LAW ENFORCEMENT INVESTIGATORS WAS ADMITTED UNDER MILITARY RULE OF EVIDENCE 804(b)(5).

Based upon United States v. McGrath, 39 MJ 158 (CMA 1994), we hold that the court below did not err, and there is no violation of appellant's Sixth Amendment right to confront and cross-examine Mrs. Bridges.

## FACTS

During the findings portion of the trial, Mrs. Bridges was called as a prosecution witness.  She gave her name, her address, and length of residency at that address.  However, when she was asked, "Do you remember going to your neighbor's house ... your

2

husband hit[ting] you that night ... slap[ping] you that night?" and other questions, she refused to answer. The judge then dismissed the court members and held a session under Article 39(a), UCMJ, 10 USC § 839(a).

At that session, Mrs. Bridges told the judge "it doesn't matter" whether she's ordered to testify or not, she will refuse to testify. The witness also stated that even if she were held in contempt, she would not respond to the judge's questions. Near the end of this session, after Mrs. Bridges said she was not willing to answer "any of the questions that [the prosecutor] poses to [her]," the judge asked, "Anything anybody else wants to ask of this witness before I let her depart the courtroom?" The defense responded, "No, Your Honor."

The judge then asked defense counsel, "Are they in the process or -- being just separated or what?" The defense counsel responded, "[T]hey are still married and they intend to remain married." The defense also responded she did not want "to testify [based on] the relationship with her husband." Later, when arguing the admissibility of a prior statement made by Mrs. Bridges to law enforcement officers on December 8, 1997, the defense indicated they would challenge Mrs. Bridges' competency. At that time, the judge gave the defense the opportunity to call her "back up here" as a witness, but the defense declined that invitation.

After this conversation, the judge determined that Mrs. Bridges was "unavailable" to testify and admitted her prior statement under the residual hearsay exception of Mil.R.Evid. 804(b)(5), Manual for Courts-Martial, United States (1998 ed.).[1] To support its admission, the judge found that the following factors supported the conclusion that the statement possessed guarantees of trustworthiness:

(1) Appellant's statement corroborated Mrs. Bridges' statement;

(2) The neighbors heard the children screaming;

(3) Mrs. Bridges "ran to a neighbor's house and reported abuse by the accused;"

(4) She was "hysterical" at the time;

(5) Mrs. Bridges reported the abuse to the doctor; and

(6) Treatment was sought at the hospital for Mrs. Bridges' two children.

After appellant's conviction and during the sentencing stage, the defense sought to introduce a second statement made by Mrs. Bridges on June 15, 1998. Trial counsel responded:

> Ma'am, for that one, we do have an objection. My concern is, of course, although we called her as a witness, she was unavailable, she won't testify. She said she won't testify. And if I called her back to cross-examine her about the contents of the letter or her bias or her motive, which will go into the allegations again, she won't testify.

Thereafter, the following discussion took place between defense counsel and the military judge:

---

[1] Now Mil.R.Evid. 807.

4

DC: Your Honor, I believe that Captain Spath [the prosecutor] would have a valid point if she went in and discussed the events. However, she states very clearly that she's talking about the impact that this will have upon her family. This is clearly matters in mitigation. While Captain Spath may be unhappy that he can't cross-examine her about areas that are not included in this statement, under the relaxed rules of sentencing, I don't think that's a valid reason to keep this out.

She does not go into the areas that he's mentioned that he wants to cross-examine her about.

MJ: Well, but that's the point. He's saying the statement's one-sided. She's talking about all the stuff with the child and the impact, and yet, he can't go into what was the impact at the time or what--you know, what was going on with the children.

\* \* \*

MJ: Well, she needs to rethink-- and I understand that she didn't, but, you know, Captain Spath has the opportunity to call her back and she needs to be prepared and come-- and he has the opportunity to present rebuttal and to cross-examine her about this.... Mrs. Bridges needs to make a decision[.]

\* \* \*

DC: Well, ma'am, you know, there's an easy way to resolve this. She's here in this courtroom, she's heard all this discussion, we can call her to the stand right now and we can ask her what she would do and you could instruct her that if she is going to be willing to answer questions, that she can't stop in the middle, as Captain Spath just suggested.

MJ: Well, I can't stop her from not stopping in the middle [sic]. I just won't let you give them the exhibit [Mrs. Bridges' statement made June 15, 1998] until she's answered questions. It's that simple. Because-- are you going to call or Spath

5

> going to call her to answer questions?  You're
> not planning on calling her, right?

DC:  I was not planning on calling her.


DISCUSSION

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him," together with "the right ... to have compulsory process for obtaining witnesses in his favor...."  Article 39(a)(4) provides for the "presence of the accused," and Article 46, UCMJ, 10 USC § 846, states that "the defense counsel ... shall have equal opportunity to obtain witnesses and other evidence...."

If the right of confrontation and cross-examination means anything, it means that the prosecution must present the hearsay declarant at trial in an attempt to elicit the out-of-court statement directly from the witness's lips while on the witness stand and under oath.  That was done in this case.

The genesis for the current Sixth Amendment interpretation is found in Justice Harlan's concurring opinion in California v. Green, 399 U.S. 149, 172 (1970).[2]  With Green as a roadmap, in Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court declared "a preference for face-to-face confrontation at trial."  Id. at 63 (emphasis added).  The Court held that hearsay is admissible

---

[2] In United States v. Owens, 484 U.S. 554, 559 (1988), the majority of the Court expressly adopted Justice Harlan's concurring opinion in Green.

6

when the witness is unavailable and the hearsay either "falls within a firmly rooted hearsay exception," see, e.g., White v. Illinois, 502 U.S. 346, 355 (1992), or has "particularized guarantees of trustworthiness," see, e.g., Idaho v. Wright, 497 U.S. 805, 820 (1990). 448 U.S. at 66. "[T]he Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Id. at 65.

The Supreme Court has used a "cost benefit" analysis when balancing witness unavailability with the "'Confrontation Clause's very mission' which is to 'advance "the accuracy of the truth-determining process in criminal trials."'" United States v. Inadi, 475 U.S. 387, 396 (1986), quoting Tennessee v. Street, 471 U.S. 409, 415 (1985), quoting Dutton v. Evans, 400 U.S. 74, 89 (1970). See also United States v. Johnston, 41 MJ 13 (CMA 1994)(purpose of a trial is truth-finding within constitutional, statutory, and ethical constraints).

The unavailability requirement is inapplicable in some situations, for example, where the utility of confrontation is "remote," Roberts, 448 U.S. at 65 n.7, or the exception is "firmly rooted," as in statements of co-conspirators, Inadi, supra; declarations against interest, United States v. Jacobs, 44

7

MJ 301 (1996)[3]; dying declarations; business records; and public records, 448 U.S. at 66 n.8. Conversely, the residual hearsay exception is not firmly rooted -- thus, the requirement to establish unavailability and particularized guarantees of trustworthiness. Idaho v. Wright, supra.

A witness is unavailable when she "persists in refusing to testify concerning the subject matter of [her] statement despite an order of the military judge to do so...." Mil.R.Evid. 804(a) In this case, appellant's wife was called to the witness stand and stated her name, address, and how long she had been living at that address. Then she told the judge that she would not testify, even if ordered to do so. Only after her refusal to testify further and defense counsel's declination of the opportunity to cross-examine her was the prosecution allowed to introduce her statement given to law enforcement officials on December 8, 1997. The prosecution was not responsible for the unavailability resulting from the refusal of the witness to testify. See, e.g., Berger v. California, 393 U.S. 314 (1969); Barber v. Page, 390 U.S. 719 (1968). Mrs. Bridges was, in effect, invoking her "marital privilege."

This case is strikingly similar to United States v. McGrath, supra, and United States v. Martindale, 40 MJ 348 (CMA 1994). In both of these cases, we held that when a witness is

---

[3] We need not decide if Mrs. Bridges' statement was a declaration against interest and, thus, a firmly rooted exception to the hearsay statement.

present and confrontation is not at issue, the judge may employ extrinsic circumstances to corroborate the witness's prior statement the proponent seeks to admit.

In McGrath, the accused's 14-year-old daughter, A, was called by the prosecution as a witness. When asked if she had made statements implicating appellant, A refused to answer. Additionally, she refused to retract or confirm her prior statements. A admitted that she appeared in court because she received a German subpoena. A said she did not want to testify because she wanted to avoid any potential harm to her father. Just as in the case sub judice, when the military judge concluded his questioning of A's daughter, he offered defense counsel an opportunity to question the witness, and defense counsel declined. 39 MJ at 159-61. Likewise, in Martindale, there was a voluntary confession, and the witness-declarant was tendered to the defense, but they expressly waived the right to confront the witness at trial. 40 MJ at 349.

Just like the witness in McGrath, Mrs. Bridges was present, was placed under oath, and gave identifying information but refused to respond to additional questions. When defense counsel was asked whether they had any questions for Mrs. Bridges, they replied in the negative. Additionally, defense counsel informed the judge that Mrs. Bridges would not testify because she intended to remain married to appellant and her refusal to

9

testify was motivated by this relationship.  The defense said that they had talked with Mrs. Bridges and knew her desires.

During sentencing, the defense noted that she was willing to testify in mitigation about the "impact" the findings would have upon her family.  The judge told defense counsel that Mrs. Bridges "needs to make a decision" about whether she will be subject to cross-examination.  The defense said that decision will be easy because "[s]he's here in this courtroom, she's heard all this discussion."  The defense then stated that they were not planning to call her as a witness.  They only wanted to introduce her written statement.  However, the judge ruled that unless Mrs. Bridges would be willing to be called and be subject to cross-examination, she would not admit the written statement.  Ultimately, the statement was not admitted.

Just as in McGrath, "it is clear that examination of the victim, direct or cross, was the very last thing on earth the defense wanted to have happen.  Having thus eschewed confrontation, appellant cannot now claim a denial of it."  39 MJ at 163.  We agree with the Court below:

> Had the defense made a sincere effort to examine the witness and she still refused to testify, the issue would be different.  However, when a witness is produced at trial and the defense makes no effort at all to avail of the opportunity thereby provided to test the recollection and conscience of the witness, it is clear that the defense waives cross-examination.  And, that waiver of cross-examination satisfies the [unavailability] requirements of the Confrontation Clause.

52 MJ at 800.

As in McGrath, "the Government did not seek to rely on paper evidence, but rather produced the witness." Id. at 163. Thus, we hold that it was appropriate for the judge to consider factors outside the making of the statement to establish the reliability of Mrs. Bridges' December 8, 1997, statement to law enforcement officials and to admit her statement during the prosecution's case-in-chief.

This is not the case of a witness who was absent. In fact, Mrs. Bridges was present and on the witness stand during the case-in-chief, and present in the courtroom during sentencing. Nor is this a case where the defense made any attempt to impeach the pretrial statement of Mrs. Bridges. This is a case of a witness trying to protect her interests, and by so doing, allowing appellant now to use the lack of cross-examination as a sword. This is a witness who was made available, but for reasons known to her, defense counsel, and possibly appellant, was unwilling to testify. In summary, it is enough that appellant and defense counsel were brought face-to-face with the witness and given an opportunity to ask the judge to order her to testify, encourage her to testify, cross-examine her, or offer evidence to discredit the pretrial statement. The defense took none of these actions.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Bridges</u>, 00-0456/AF


SULLIVAN, Judge (concurring in the result):

I vote to affirm this case, but I do so via a different path. I do so since the majority opinion's approach to this case troubles me. It first suggests that appellant's constitutional right to confrontation was not an issue because Mrs. Bridges was called to the stand as a witness prior to the admission of her hearsay statement under Mil.R.Evid. 804(b)(5). ___ MJ at <u>(9)</u>. A similar question was addressed by the Supreme Court in <u>United States v. Owens</u>, 484 U.S. 554 (1988). <u>See</u> <u>also</u> <u>Delaware v. Fensterer</u>, 474 U.S. 15 (1985). There, the Supreme Court said that the constitutionally required "guarantees of trustworthiness" are not "called for when a hearsay declarant is present at trial <u>and subject to unrestricted cross-examination</u>." <u>Id</u>. at 560 (emphasis added). Clearly, Mrs. Bridges was not subject to unrestricted cross-examination in this case because she refused to answer any questions. <u>See</u> <u>United States v. Vernor</u>, 902 F.2d 1182, 1186 (5th Cir. 1990) (hearsay statement of witness who asserted Fifth Amendment privilege subject to constitutional standard of trustworthiness). Even <u>United States v. McGrath</u>, 39 MJ 158, 163 (CMA 1994), recognized this point.


Merely bringing an appellant and witness face-to-face and asking the judge to order a recalcitrant witness to testify does not constitute an effective or meaningful opportunity for cross-

examination.  The prosecution had elicited precious little information about Julia Bridges that could be questioned by defense counsel.  Requiring a defense counsel in this situation to conduct a pointless cross-examination (or, alternately, asking the judge to order the witness to testify) in order to preserve an accused's confrontation rights is equally hollow, i.e., "The law does not require the doing of a futile act."  Ohio v. Roberts, 448 U.S. 56, 74 (1980).  A need for a constitutional showing of trustworthiness existed in this case.  See United States v. Vernor, supra.

Next, the majority opinion appears to hold that there is no constitutional confrontation issue in this case because appellant waived his right to cross-examine Mrs. Bridges.  Its analysis focuses on the decision of this Court in United States v. McGrath, supra, but overlooks applicable Supreme Court precedent on waiver of the constitutional right to confrontation.  See Brookhart v. Janis, 384 U.S. 1 (1966).  I find this approach unsatisfactory.

In Brookhart v. Janis, the Supreme Court addressed waiver of the right to confrontation as follows:

> The question of a waiver of a federally
> guaranteed constitutional right is, of
> course, a federal question controlled by
> federal law.  There is a presumption

> against the waiver of constitutional
> rights, see, e.g., Glasser v. United
> States, 315 U.S. 60, 70-71, and for a
> waiver to be effective it must be clearly
> established that there was "an intentional
> relinquishment or abandonment of a known
> right or privilege." Johnson v. Zerbst,
> 304 U.S. 458, 464.
>
> In deciding the federal question of
> waiver raised here we must, of course,
> look to the facts which allegedly support
> the waiver. Upon an examination of the
> facts shown in this record, we are
> completely unable to agree with the
> Supreme Court of Ohio that the petitioner
> intelligently and knowingly waived his
> right to cross-examine the witnesses whose
> testimony was used to convict him.

384 U.S. at 4-5 (footnote omitted).

Turning to the facts of appellant's case, as described by the majority opinion, I see no waiver by appellant of his right to cross-examine his wife. More is required than a failure of defense counsel to cross-examine the witness. See Hawkins v. Hannigan, 185 F.3d 1146, 1155 n.5 (10th Cir. 1999), citing Cruzado v. People of Puerto Rico, 210 F.2d 789, 791 (1st Cir. 1954) (approving waiver by defense counsel stipulation); United States v. Figueroa, 976 F.2d 1446, 1457 (1st Cir. 1992). Here defense counsel was told in advance by the witness that she would answer no questions. There was no stipulation in this case, and I see no strategic inaction in his subsequent failure to question this recalcitrant witness. United States v. McGrath, supra at 170 (Sullivan, J., dissenting) (defense offered chance to cross-

examine victim but declined after witness asserted that she would not answer).

Since I see a confrontation issue in this case, my remaining question is whether there were particular guarantees of trustworthiness surrounding the making of Mrs. Bridges' out of court statement which warranted its admission at appellant's court-martial. In my view, Idaho v. Wright, 497 U.S. 805 (1990), not McGrath or United States v. Martindale, 40 MJ 348 (CMA 1994), controls.

Here, there were several factors surrounding the making of her statement which provided the necessary particularized guarantees of trustworthiness. Mrs. Bridges' statement was handwritten shortly after the alleged incident on December 8, 1997; it was made to security forces called to the scene by Annette Richner at the request of Mrs. Bridges; Ms. Richner also said Mrs. Bridges was hysterical shortly after the alleged incident before making the statement; another witness stated that she heard appellant yelling at his daughter through the wall of their duplex-type, on-base residence shortly before her statement was made; and finally, evidence was admitted that Mrs. Bridges made a second consistent statement at Abilene Regional Hospital, 90 minutes later, when she sought medical treatment for her two children. See United States v. Orena, 32 F.3d 704, 712 (2[d] Cir.

4

1994) (statements made during life and death battle); United States v. Bradley, 145 F.3$^d$ 889, 895 (7th Cir. 1998) (admission of wife's statement to officers responding to emergency call satisfies Idaho v. Wright); cf. United States v. Mitchell, 145 F.3d 572, 579 (3$^d$ Cir. 1998) (admission of anonymous note violates Idaho v. Wright).

United States v. Bridges, No. 00-0456/AF

BAKER, Judge (concurring in the result):

For the reasons stated by Judge Sullivan, I do not believe the record reflects that appellant waived his right to cross-examine Mrs. Bridges. Although it may have been to appellant's immediate tactical advantage not to cross-examine Mrs. Bridges, where, as here, it was apparent to all present that Mrs. Bridges would not testify, we should not place form over substance and require defense counsel to engage in a charade in order to preserve the constitutional right of cross-examination. As Judge Sullivan has observed elsewhere, defense counsel's position on cross-examination may well change in response to a military judge's ruling on the admission of an out of court statement. United States v. McGrath, 39 MJ 158, 170 (CMA 1994)(Sullivan, J., dissenting). Nonetheless, I concur in the result.

In this case, the military judge correctly determined that Mrs. Bridges was not available for the purpose of cross-examination and, therefore, the Government established the necessity of introducing her out-of-court statement into evidence. And, although the judge's ruling was in response to the attempts of trial counsel to question Mrs. Bridges, her ruling on availability was not limited to the Government. The military judge also

1

correctly determined that Mrs. Bridges' statement carried adequate indicia of reliability.  This is true whether this Court relies on waiver and McGrath (relying on particularized guarantees of trustworthiness from corroborating evidence unrelated to the making of the statement), or as Judge Sullivan and I argue, in the absence of waiver, the Court limits its inquiry to indicia of reliability surrounding the making of the statement itself.  Idaho v. Wright, 497 U.S. 805, 820 (1990).

The judge's findings of fact and conclusions of law regarding admissibility satisfy both tests.  The particularized guarantees of trustworthiness surrounding the making of Mrs. Bridges' statement include the following: her statement was made under oath; her statement was made "within fairly close proximity" to the events in question; and her statement was against her own pecuniary interest, evidenced in part by her subsequent refusal to testify.*  In light of these factors, it is not necessary to look to additional extrinsic circumstantial guarantees of trustworthiness, such as the observations of Mrs. Bridges' neighbors; the circumstances surrounding her response to

_____

* I leave for another day, whether this latter factor alone would have warranted admission of Mrs. Bridges' statement as a firmly rooted hearsay exception.  Id. at 815.

security forces; or statements made to the attending

physician when she sought treatment for her two children.